**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

STELOR PRODUCTIONS, INC.,                    CASE NO. 04–80954–CIV–HURLEY
(a Delaware Corporation)
                                             Magistrate: Judge James M. Hopkins
                       Plaintiff

        v.

STEVEN A. SILVERS,
(a resident of Palm Beach County, Florida).

                       Defendant.

_____

## PLAINTIFF'S REPLY TO SILVERS' MEMORANDUM IN OPPOSITION TO STELOR'S MOTION FOR PRELIMINARY INJUNCTION

### I.  INTRODUCTION

Plaintiff, Stelor Productions, Inc. ("Stelor"), by and through undersigned counsel, hereby replies to Defendant's, Steven A. Silvers' ("Silvers"), Memorandum in Opposition to Stelor's Motion for Preliminary Injunction:

Stelor merely seeks to conduct its business free from interference by Silvers. That is exactly what Silvers licensed Stelor to do, pursuant to the License, Distribution and Manufacturing Agreement ("License Agreement") entered into by the parties in 2002.

Contrary to Defendant's assertions, an order granting Stelor's request for an injunction is needed to protect Stelor's rights under that License Agreement, by prohibiting Silvers from interfering with the foundation of Stelor's business, the Licensed "GOOGLES" Intellectual Property. As the evidence demonstrates, Stelor has been, and in the absence of injunctive relief will continue to be, irreparably harmed.

### II.  BRIEF STATEMENT OF FACTS

Notwithstanding Defendant's overstatement of his role in bringing the Googles from Goo to market, the fact remains that Stelor is truly responsible for the progress Mr. Silvers' original concept has made over the past two years. Silvers lacked the resources, drive, and credibility to turn the concept into a commercially successful reality. One of the key reasons Defendant was unable to commercialize his property on his own was his felony conviction for cocaine

trafficking, defrauding the U.S. Government, and subsequent incarceration. Defendant's past criminal record and incarceration was a key factor in Plaintiff entering into the subject License Agreement. Both Plaintiff and Defendant correctly believed that Defendant's criminal past would make him an unsuitable figurehead for commercializing Children's products and services aimed at preschool and grades K-5.

This dispute centers on the License Agreement. Although Defendant now contends that he only granted Stelor a "non-exclusive right to maintain and defend the GOOGLES IP," the plain language of the License Agreement dictates that Stelor's right is, at a minimum, exclusive. *See* Silvers' Memorandum in Opposition to Stelor's Motion for Preliminary Injunction ("Opposition"), p. 2. Article VIII(A) begins by stating that "LICENSOR hereby grants LICENSEE all right, power and interest..." and ends by stating that Stelor may "...act for and on LICENSOR'S behalf and *instead of* LICENSOR...." *See* Opposition, Exhibit "A," License Agreement, Article VIII(A) *emphasis added*. The plain language of Article VIII represents the clear intention of both parties: that Stelor would have an exclusive right to protect and defend the GOOGLES IP.

As the court is aware, there are a number of ongoing legal battles between Stelor and Google Inc. being fought in both the United States Patent and Trademark Office ("USPTO") and the National Arbitration Forum ("NAF"). Contrary to Silvers' assertions in his response to the pending motion, the License Agreement has everything to do with him cooperating in the pending disputes with Google Inc. A potential dispute with Google Inc. was predicted by both Silvers and Stelor when they entered into the License Agreement, and they were prepared for such a dispute. In fact, Silvers entered into an agreement with the Ganz partnership in 2001[1] wherein he inserted a handwritten amendment to the agreement in which Ganz disclaimed any cause of action against Silvers relative to "the legal action to be pursued by Silvers, *et. al.* against the search engine known as www.google.com." *See* Exhibit "A," The Ganz Agreement, Article 3 subsection 3.1. It is apparent that Silvers had foreseen the coming dispute with Google Inc. for

---

[1] Silvers and Ganz were engaged in a dispute as a result of their conflicting trademark registrations. The parties to that agreement (the Ganz Agreement) covenanted to co-exist and drew clear delineations as far as the types, and design, of products that could be developed and marketed by either party. The rights and obligations in the Ganz agreement are subsumed in the License Agreement.

2

some time, and perhaps even more revealing is that the "et. al." referred to in the amendment is Steven A. Esrig and the soon to be formed Stelor Productions, Inc.

Also indicative of Silvers' desire to engage in legal actions against Google Inc. relative to his trademark registration are the countless emails and letters sent by him to Stelor before, during, and after Stelor's inception.[2]   In those emails Defendant prods Stelor to "sue these bastards now" (July 27, 2003) and "bring them [Google Inc.] down or better yet put the fear of God in them" only after railing against Google's founders stating "I hate looking at the cover of Time Mag with those two yuppies gloating like the[y] are" (April 15, 2004).   *See* Exhibit "B," two emails from Silvers to Steve Esrig, CEO of Stelor Productions, Inc.  (Due to their length, the relevant portion of each email has been highlighted for the court.)  It was clear to Stelor that Silvers not only foresaw, but eagerly anticipated, litigation with Google Inc.  As a result, the License Agreement requires that Silvers "cooperat[e] in every way necessary and desirable to strengthen, establish or maintain the "Googles" intellectual property and related assets."  *See* License Agreement, Article VIII(E).  This provision directly relates to anticipated litigation between Stelor and Google Inc, or any other infringer, and requires Silvers to cooperate with Stelor. Defendant's emails indicate he has always, until recently, been willing to cooperate with any dispute with Google, Inc.  Silvers' conduct to date, relative to the disputes with Google Inc., has been anything but desirable and in fact has prejudiced Stelor's ability to protect the GOOGLES IP.

### III. <u>THE PROPER STANDARD FOR PRELIMINARY INJUNCTION</u>

Stelor requests injunctive relief in order to maintain the status quo during the pendency of this action.  To this end, Stelor requests that Silvers be ordered to cease interfering with the actions now pending in the USPTO and the NAF.  Silvers' attempt to characterize the injunction as seeking mandatory relief is inaccurate.  Stelor asks the court to prohibit Silvers from taking action, and not to force Silvers to take any affirmative actions.  *See* Plaintiff's Emergency Motion for Preliminary Injunction, pp. 2-3.

Although Clause "E" of Plaintiff's motion does request that the court order Silvers to immediately and fully cooperate with Stelor, Silvers' opposition acknowledges his obligation

---

[2] Stelor is in possession of in excess of 100 emails and letters wherein Silvers, at a minimum, discusses litigation against Google Inc., and in some cases all-out demands that Stelor take immediate legal action.

and confirms his willingness to do so.  Specifically, Defendant states "Silvers has always been prepared to provide Stelor with any evidence it requests and remains willing to do so, subject to the qualification that he must protect his interests as to Stelor, with whom Silvers is adverse." *See* Opposition, p. 5, footnote 3.

The issue, therefore, is Silvers' continued interference with the foundation of Stelor's business.  Unless immediately enjoined, that interference threatens irreparable harm to Stelor. Accordingly, the injunction should be issued if, as done here, Plaintiff establishes four elements: (1) substantial likelihood of success on the merits; (2) irreparable harm if injunctive relief is denied; (3) that the threatened injury to the plaintiff outweighs whatever damage the injunction may cause to the defendant; and (4) that the injunction, if issued, would not be adverse to the public interest.  *See McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1306 & n.2 (11th Cir. 1998) (rejecting defendant's attempt to characterize as mandatory an injunction merely seeking to maintain the status quo); *Davidoff & Cie, S.A. v. PLD Int'l Corp.,* 263 F.3d 1297, 1300 (11th Cir. 2001);

Even if a higher standard attaches, and it should not, Stelor meets the test.  The arguments set forth in the original motion, as well as those below, establish a "clear showing" that Stelor is entitled to the requested relief, *and* that serious damage will result if the preliminary injunction is not granted.

## IV. ARGUMENT

Stelor has clearly established the four elements for injunctive relief.  Stelor has a substantial likelihood of success on the merits, as Silvers' conduct is entirely inconsistent with the express terms of the License Agreement.  The damage to Stelor's business – already occurring and threatened to continue – will be irreparable, unless Silvers' conduct is immediately enjoined.  The threatened injury to Stelor, moreover, greatly outweighs any alleged damage to Silvers from an injunction, which in all likelihood would benefit him and would merely require him to refrain from conduct prohibited by the License Agreement in any event.  With respect to the fourth element, Defendant does not dispute that a Preliminary Injunction under the circumstances would not be a disservice to the public interest.

Nor can Defendant properly rely on a limitation of liability clause contained in the License Agreement and a misplaced argument regarding the monetary requirements of diversity

jurisdiction.  The value of the requested injunction to Stelor clearly satisfies the amount in controversy requirement.

**A.    Stelor Has a Substantial Likelihood of Success
        on Its Breach of Contract Claim**

In order to succeed on a breach of contract claim Stelor must prove that (1) a contract existed, (2) the contract was breached, and (3) damages resulted.  *See Berk v. Lazard Freres & Co., LLC,* 175 F.3d 913, 914 (11ᵗʰ Cir. 1999).  Since Stelor's claims are based on a breach of the License Agreement and Silvers' concedes that such an agreement is currently valid and operational, Stelor need only respond to Silvers' contentions with respect to breach and damages.

*1.    Pursuant to the License Agreement, Stelor has the Right to Defend the GOOGLES Intellectual Property, on Behalf of and Instead of Silvers.*

In his opposition, Defendant avoids addressing the numerous ways in which he has interfered with Stelor's exclusive right to defend the GOOGLES IP by, in a manner of speaking, skipping the procedural history and heading straight for the present status of the dispute.  For example, pursuant to its rights under the License Agreement, Stelor secured counsel in order to file a Uniform Domain-name Resolution Policy ("UDRP") action in the NAF on behalf of Defendant.  As "inexplicable" as Defendant may find such an action to be, Stelor was simply exercising its rights under the license agreement to "act for and instead of" Defendant in protecting the GOOGLES IP.  Due to Defendant's raucous interjections and objections related to filing any action in his name, the action was commenced in Stelor's name only. *See* Exhibit "C," UDRP Commencement.

Defendant further demonstrated his intent to interfere with the GOOGLES IP, when in his Notice of Withdrawal of Complaint, filed in the NAF, Defendant represented, through counsel, that he "does not dispute Google Inc.'s right to use the domain name Google.com...." *See* Exhibit "D," Notice of Withdrawal of Complaint, p. 1.  Such a position, which directly contradicts two years of correspondence from Defendant stating the opposite, would irreparably harm Stelor's Intellectual Property rights in the Googles IP.  Furthermore, Defendant represented through counsel that he is currently negotiating with, and will continue to negotiate with, Google Inc., despite the License Agreement.  *See* Exhibit "E," Letter from Gail McQuilkin to Yano Rubinstein dated November 16, 2004, p.2.

Defendant argues that Google Inc.'s attempt at canceling the GOOGLES trademark is an attack on Defendant's ownership and not the manner in which the mark is used.  Whether or not this is an accurate characterization is not at issue, but what is determinative is the fact that Article VIII(A) of the License Agreement grants Stelor the right to "enforce, maintain and defend" the GOOGLES IP.  *See* Opposition, Exhibit "A," License Agreement Article VIII(A).

The bottom line is that time and time again Stelor has stepped in to protect Defendant's GOOGLES IP only to be rebuked and threatened for engaging in precisely the activities envisioned by the License Agreement.

Defendant's reliance on Article XII(C)(iii) is likewise misplaced.  This section *may* give each party the right to "participate in" a suit filed against it, but "participate in" is a far cry from what Defendant construes this passage to permit.  What is more pertinent to this dispute is the preceding section which states that, "each party shall have the right to assume, at its sole expense, the defense of a claim or suit made or filed against the *other* party."  *See* Opposition, Exhibit "A", License Agreement, Article XII(C)(ii), *emphasis added*.  Stelor has exercised its absolute right to assume the defense of Defendant.  As a result, Defendant is left with at most, a right to cooperate with Stelor in such defense, but does not have the power to interfere in the manner he has so far.

Also troublesome are Defendant's mischaracterizations of deposition testimony provided by Stelor's CEO, Steven A. Esrig.  Defendant quotes testimony out of context, twisting Mr. Esrig's words, in order to minimize the effect he has had on the various disputes.  The simple fact is that Defendant was up in arms about Stelor's retention of counsel to defend the GOOGLES IP on his behalf, and it was at Defendant's behest that such representation did not commence.

Finally Defendant argues that he has the right to request that all correspondence from the USPTO with respect to trademarks filed in his name be directed to his address.  Stelor has an express power of attorney, granted to it in the License Agreement, to maintain the GOOGLES IP which necessarily requires corresponding with the USPTO.  Defendant's accusation that Stelor was negligent in maintaining trademarks is particularly disingenuous considering the fact that Defendant has been holding the login and password for the googles.com domain name hostage since the beginning of the relationship between the parties.

Defendant's interference with Stelor's contractual right to step in and defend the GOOGLES IP places the subject intellectual property at risk, posing a grave threat to Stelor's ability to continue its efforts in bringing this concept to market. Defendant's opposition does nothing to provide a basis for his assertion that his actions have not interfered with Stelor's ability to conduct business and protect the GOOGLES IP.

**B.    If Permitted to Continue on his Present Course of Conduct, Defendant will Irreparably Harm Stelor**

Contrary to Defendant's assertion, the harm he has caused, and will continue to cause, cannot be redressed monetarily. Silvers has engaged in an intentional campaign to interfere with, disrupt, and damage Stelor – both in conducting litigation fundamental to its business and, more generally, in developing the fan-base and financial foundation crucial to making the Googles from Goo into a commercially viable enterprise.    By (1) instigating the misdirection of correspondence from the USPTO to himself, (2) refusing to permit Stelor to secure counsel to represent Defendant's interests in the TTAB and NAF, and (3) refusing to cooperate with Stelor in such proceedings, Defendant exposes Stelor to liability and to loss of revenues which are not only impossible to calculate due to their enormity, but even if they were calculable Defendant could never satisfy any such judgment were it entered against him. *See* Exhibit "F," Declaration of Steven A. Esrig, para. 2.

Notwithstanding Defendant's selective quoting of Mr. Esrig's deposition testimony, and his complete disregard of the other evidence, the fact is that Defendant's conduct poses a risk to the entire Stelor operation. Silvers' interference prevents Stelor from (1) resolving its disputes with Google Inc., (2) updating and maintaining both googles.com and its licensed trademarks, and (3) acquiring the fan-base and financial foundation to further develop the Googles from Goo into a commercially viable enterprise.

Under these circumstances, immediate injunctive relief is required and justified to prevent the irreparable harm caused by Defendant's continued actions.    *See McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1310 (11th Cir. 1998) (threat of lost profits and damage to reputation, where no realistic way to determine damages, constitutes irreparable harm); *U.S. v. Bowman,* 341 F.3d 1228, 1237 (11th Cir. 2003) (potential harm to business from loss of goodwill and inability to sell its products constitutes irreparable harm); *Florida Businessmen for Free Enterprise v. City of Hollywood,* 648 F.2d 956, 958 & n.2 (11th Cir. 1981) ("A substantial loss of business may

amount to irreparable injury if the amount of lost profits is difficult or impossible to calculate");[3] *Ferrero v. Associated Materials, Inc.*, 923 F.2d 1441, 1449 (11th Cir. 1991) (damage to a business resulting from "the loss of customers and goodwill is an 'irreparable' injury").

## C.    The Injury to Stelor Outweighs Any Harm an Injunction May Cause Defendant

As discussed above, Silvers' interference has jeopardized Stelor's entire business, creating real and immediate obstacles preventing Stelor from bringing the Googles concept to market. Defendant's conclusory statements that an injunction will harm him more than denial of an injunction would harm Stelor are simply untrue. The requested injunction will serve to facilitate the realization of Defendant's *and* Stelor's aspirations for the Googles concept. The injunction, therefore, will actually *benefit* Defendant, as he stands to profit from the success of the Googles concept vis-à-vis royalties due him under the License Agreement – a portion of the agreement with which Defendant surely has no qualm. Nor can Defendant legitimately claim he would be harmed by an injunction barring him from conduct that is improper in any event under the License Agreement. The balance regarding this element clearly weighs in Stelor's favor. *See Ferrero*, 923 F.2d 1449 (rejecting a similarly "specious" argument by a defendant, given the threatened irreparable injury of immeasurable loss of business).

## D.    Silvers Cannot Legitimately Claim There Has Been Any Delay.

Defendant argues that a preliminary injunction is inappropriate here because of Stelor's alleged delay in requesting such relief. This argument is entirely misplaced.

Stelor has endured a contentious relationship with Defendant over the course of the past two years all the while hoping to reach an amicable solution to their problems. Only recently, the schism between Stelor and Defendant reached a point where resolution of the issues appeared impossible. Perhaps not coincidentally, Silvers' attempts to interfere with and disrupt the business of Stelor spiked, as did the resulting problems of Stelor's imminent and irreparable injury. Accordingly, Stelor filed the instant action. There was no delay, but rather a bona fide attempt by Stelor to resolve its issues with Defendant until Defendant's ongoing and intentional misconduct made that impossible.

---

[3] *See Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopting as binding authority all decisions issued by the Former Fifth Circuit prior to October 1, 1981.

Under these circumstances, Silvers cannot legitimately invoke any alleged delay as a defense to the required injunction. Indeed, as the Court explained in *Dow Jones & Co., Inc. v. Kaye*, 90 F. Supp. 2d 1347, 1361 (S.D. Fla. 2000) (Jordan, J.), *app. dismissed as moot and for lack of jurisdiction*, 256 F.3d 1251 (11th Cir. 2001), unless an alleged delay in filing suit shifts the balance of the equities in a defendant's favor, which occurs primarily in the Lanham Act context, the delay will not prevent issuance of an injunction. For exactly that reason, Judge Jordan distinguished the Second Circuit case on which Defendant primarily relies, *Citibank, N.A. v. Citytrust*, 756 F.2d 273 (2d Cir. 1985). The *Citibank* case has no application here either.

As the controlling Eleventh Circuit cases confirm, delay is no bar to a required injunction, especially where – as here – the Defendant's conduct has been intentional. *See Kason Indus., Inc. v. Component Hardware Group, Inc.*, 120 F.3d 1199 (11th Cir. 1997) (alleged nine year delay in bringing trademark infringement action no bar to injunction). Silvers, moreover, has no conceivable argument that Stelor in any way acquiesced in his misconduct, which would be a necessary showing for the delay to matter. *See SunAmerica Corp. v. Sun Life Assur. Co.*, 77 F.3d 1325, 1334-35 (11th Cir. 1996). Nor for that matter can Silvers claim (let alone show) he suffered any harm as a result of an alleged delay. *See Ocean Garden, Inc. v. Maktrade Co., Inc.*, 953 F.2d 500, 508-09 (9th Cir. 1991).

Defendant's argument is entirely unfounded – legally and factually. Defendant cannot legitimately argue delay to avoid entry of the requested injunction.

**E.    The Limitation of Liability Clause in the License Agreement Is No Bar to Recovery**

The limitation of liability clause in the License Agreement does not defeat subject matter jurisdiction.[4] In evaluating the amount in controversy requirement in an action for injunctive relief, the issue is the value of the benefit flowing to the plaintiff from the requested injunction. *See Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000); *see Occidental Chem. Corp. v. Bullard*, 995 F.2d 1046, 1047-48 (11th Cir. 1993). "In other words, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff

---

[4] The limitation of liability provision is likely unenforceable in any event, as Defendant's misconduct has entirely frustrated the purpose of that provision. Fla. Stat. 672.719 (limitation of remedies unenforceable "where circumstances cause an exclusive or limited remedy to fail of its essential purpose"); *see Typographical Serv., Inc. v. Itek Corp.*, 721 F.2d 1317, 1320 (11th Cir. 1983).

if the injunction were granted." *Morrison*, 228 F.3d at 1268.  That is a liberal standard, moreover, to be measured from the Plaintiff's perspective. *Id.*

The facts clearly establish that the benefits flowing to Stelor from the injunction – the termination of Silvers' interference and the development of Stelor's business – will substantially exceed $75,000.  *See* Exhibit "F," Esrig Decl. para 3.  Defendant's desperate attempt to escape jurisdiction and liability under this section of the License Agreement is entirely without merit.

## V.  Conclusion

For all the reasons stated above, and those contained in the underlying motion, Stelor's injunction should be granted.

Respectfully submitted,

Burlington, Weil, Schwiep,
  Kaplan & Blonsky, P.A.
  Attorneys for Plaintiff,

Of Counsel:

STELOR PRODUCTIONS, INC.
Office in the Grove

Yano L. Rubinstein, Esq.

Penthouse

SUMMERS RUBINSTEIN, P.C.

2699 South Bayshore Drive

580 California Street

Miami, Florida 33133

16th Floor

Tel: (305) 858-2900

San Francisco, California 94104

Fax: (305) 858-5261

Tel:  (415) 439-4816

Fax: (415) 651-9853

By:_____
    Kevin C. Kaplan, Esq.
    Florida Bar No. 933848

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing, PLAINTIFF'S REPLY TO SILVERS' MEMORANDUM IN OPPOSITION TO STELOR'S MOTION FOR PRELIMINARY INJUNCTION, was served this 27 day of December, 2004, via Hand Delivery on:

Gail M. McQuilkin, Esq.
Kozyak, Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800
Facsimile: (305) 372.3508


Kevin C. Kaplan, Esq.

# EXHIBIT A

## AGREEMENT

This Agreement is made and entered by and between Steven A. Silvers, an individual

with an address of 3741 N.E. 163rd Street, Suite 325, North Miami Beach, Florida 33160, and

The Googles Children's Workshop, a company organized under the laws of Florida, with its

principal office of 3741 N.E. 163rd Street, Suite 325, North Miami Beach, Florida 33160

(collectively "Silvers") on the one hand, and Ganz, a partnership organized and existing under

the laws of the Canada, with its principal office at One Pearce Road, Woodbridge, Ontario L4L

3T2, Canada, on the other hand.

## ARTICLE 1. RECITALS

1.1    Ganz is the owner of the pending United States trademark application for

GOOGLES Serial No. 75/572,905 in International Class 28 for PLUSH TOYS; and

1.2    For the purposes of this Agreement, the designation "Ganz's Mark" shall mean

the GOOGLES Mark; and

1.3    Silvers is the owner of the pending United States trademark application for the

mark GOOGLES and Design Serial No. 75/547,007 in International Class 28 for PLUSH TOY

FIGURINES, PLASTIC TOY FIGURES; and

1.4    For the purposes of this Agreement, the designation "Silvers' Mark" shall mean

the GOOGLES and Design Mark as represented in Serial No. 75/547,007; and

1.5    The parties have used their respective marks in commerce and are not aware of

any actual consumer confusion based on the parties' contemporaneous use of these marks; and

1.6    The parties to this Agreement are desirous of settling by this Agreement, which

they believe will avoid public confusion and will avoid further legal action between them, the

opposition filed by Ganz to Silvers' Application No. 75/547,007.

1.7    Ganz believes that as long as Silvers uses the Silvers' Mark at all times with the design configuration as reflected in Application No. 75/547,007, there will be no likelihood of confusion in the market place as it pertains to Ganz's line of GOOGLES plush toys.

## ARTICLE 2. RIGHTS AND OBLIGATIONS

2.1    Silvers shall have the right to use the Silvers' Mark in connection with the extraterrestrial character depicted in Exhibit A to this Agreement, and subject to the following:

(a)    Silvers shall expressly abandon Serial No. 75/547,007 and not seek to register at the either the federal or the state level any mark containing, or confusingly similar to, "GOOGLES" for PLUSH TOYS, but Silvers will not abandon any other "Googles" marks he holds or will hold in the future that relate to goods other than plush toys.

(b)    Silvers shall not use the GOOGLES word on or in connection with any product, image or character without also using the character depicted in Exhibit A to this Agreement. If there is not room for the design portion of the Silvers' Mark along with the term "Googles," Silvers may use the word only, so long as use is not made in connection with a plush toy.

(c)    Silvers shall never manufacture, distribute, market and/or sell any characters that resemble Ganz's current line of plush toys, or such plush toys that Ganz may add to the GOOGLES line in the future.

(d)    Silvers and/or any assigns, persons, corporation(s), entities, heirs or legal representatives that Silvers designates to use the Silvers' Mark may use the Silvers' Mark on any such items that shall be marketed and distributed by Silvers, or by any other such designated entity of his or his

assigns, heirs, or legal representatives, as long as the **Silvers' Mark** is used with the design logo and not just the word mark "Googles," except as set forth herein.

    (e)    Except as otherwise specified in this Agreement, Silvers is not prevented from creating other aliens or alien-themed merchandise utilizing the Silvers' Mark. Silvers may continue to use the terms "The Googles Family," "The Googles from Goo," "Googles.com" and any other terms currently being used or created for the alien-themed property and merchandise. Silvers may use the term "Googles" for purposes such as titles to books, movies, features, music, music titles and web sites relating to the alien-themed property.

2.2    Silvers shall not object to, seek cancellation of, or in any way interfere with Ganz's use or registration of the mark "GOOGLES," provided such use or registration is otherwise in accordance with this Agreement.

2.3    Ganz shall have the right to use the **Ganz Mark** subject to the following:

    (a)    Ganz shall not use the **Ganz Mark** in connection with extraterrestrial characters and shall never manufacture, distribute, market and/or sell any characters that resemble Silvers' current line of plush toy aliens that are similar to Silvers' character known as "Googles" and which can be seen at Silvers' web site at www.googles.com, or such alien-themed plush toys that Silvers may add to the alien line in the future.

    (b)    Ganz shall have the unlimited right to use and register the mark "GOOGLES" on any and all goods and services, provided that such use or

10-29-04; 8:34PM;XEROX 2205T

registration is otherwise in accordance with this Agreement. Ganz shall
have the right to use and register the mark "GOOGLES" as a word mark
and in conjunction with a design, so long as the design is not confusingly
similar to the design logo used in Silvers' **Mark.**

### ARTICLE 3.  GENERAL PROVISIONS

3.1    The parties agree that their respective goods and services as defined in this
Agreement are distinctly different, are not directly competitive goods and services and that their
coexistence in the marketplace has not created any actual confusion to date and, if used in
accordance with this Agreement, are not likely to create a likelihood of confusion.  Nevertheless,
should instances of actual confusion arise, the parties will cooperate to take such steps as are
reasonably necessary to prevent further consumer confusion.

3.2    Ganz does hereby for itself and its affiliates, successors, assigns, officers,
directors, employees, agents, heirs and executors, and their heirs and executors, release and
forever discharge Silvers, its affiliates, predecessors, successors and assigns, and its officers,
directors, employees and agents, and their heirs, executors and assigns, from any and all claims,
demands and causes of action of any nature whatsoever that Ganz has as the date hereof against
Silvers, his affiliates, predecessors, and successors, except for any obligation arising hereunder,
including claims regarding the use of "GOOGLES" as a domain name *AND THE LEGAL ACTION TO BE PURSUED BY SILVERS, ET. AL. AGAINST THE SEARCH ENGINE KNOWN AS www.google.com*

3.3    Silvers does hereby for itself and its affiliates, successors and assigns, officers,
directors, employees, agents, heirs and executors, and their heirs and executors, release and
forever discharge Ganz, its affiliates, predecessors, successors and assigns, and its officers,
directors, employees and agents, and their heirs, executors and assigns, from any and all claims,
demands and causes of action of any nature whatsoever that Silvers has as the date hereof against

Gunz, its affiliates, predecessors, and successors, and its officers, directors, employees and agents, and their heirs and executors, except for any obligation arising hereunder.

3.4     This Agreement will be binding upon the parties hereto, and will inure to the benefit of, and will be binding upon the successors, assigns, persons, corporation(s), entities, heirs or legal representatives of the parties to this Agreement.

3.5     The geographical scope of this Agreement shall be Canada and the United States.

3.6     Such co-existence agreement shall last for so long as the other party makes use of and/or has registrations for GOOGLES marks.

3.7     This constitutes the full and complete Agreement between the parties hereto, and there are no other Agreements or understandings collateral or ancillary to this Agreement. This Agreement can be modified only by writing executed by each of the parties hereto.

This Agreement has been executed by the parties on the dates hereinafter indicated in duplicate, each of which shall be considered an original, and shall be effective as of the last date.

**STEVEN A. SILVERS**

Date: 1/4/01

**THE GOOGLES CHILDREN'S WORKSHOP**

By:

Name: Steven A. Silvers

Title: President

Date: 1/4/01

**GANZ**

By: _Owen S. Roger_

Name: _Owen S. Rogers_

Title: _E V P_

Date: _March 6, 2001_

# EXHIBIT B

**Subject: More Trademark Updates**
**Date:** Sunday, July 27, 2003 3:08 PM
**From:** Steven Silvers <gewrue@hotmail.com>
**To:** <sesrig@stelorproductions.com>

Steve, here is some more trademark news. It seems that someone, who, I have
no idea, is challenging Google.com in several class codes that they have
applied for. It could be Ganz in the 028 category but there are other class
codes that seem to be in the challenge or opposition stage. The USPTO send
Google, Inc. a letter on March 28 of 2003 called "An office action
suspending further action on the application". I don't know what this is
all about? They have not been issued any trademark as of yet, as best as I
can determine in any of the class codes they have filed for. Ira should get
on this and find out who it is that is challenging them and what the current
status is of things. We will, undoubtedly, have to join in and oppose as
well if it is not already too late for us to do so. Esp., in both 028 and
016 categories unless Ganz is behind all of this and that would not surprise
me but with the legal contract we have that they would not seek to sue them,
we need to step to the plate with what we now have in the way of a
"co-existant" relationship with Ganz that is binding and etched in stone.
There is also more trouble brewing. Google.com and it's parent company
Google, Inc. decided to get cute and they trademarked "GoogleStore" and it's
in ICC 035 for online shopping cart, and electronic retailing, etc. They
are planning to sell everything you can think of through this store with
their branding "Google.com" brand name. Including, books, like Amazon.com,
plush toys, etc. We need to sue these bastards NOW! We can no longer
afford to wait on this. We've already lost out on the Googles bakery item
trademark as it was approved and issued on August 6, 2002, only a few months
after we jumped into bed together (June of 2002). This was a fuck up on
Malen and Haily's behalf which falls on Aurora but Haily will state that
they were not paid by Aurora and tough shit. So who winds up eating that,
Stelor and Silvers. Not GOO! This was a real f___k up. Now we can't
market cookies or cakes or anything to do with Googles or Googles related
pastry items for birthdays, etc. I envisioned having Googles' cookies with
each of the characters like the famous "animal cracker" if you recall. Now
that is all down the tubes. Some more information. Some one is attempting
to register "Googles" (just like our name), in class codes 09, 016, and 035,
036 and 042, and it's not Ganz or Google.com or Google, Inc. It's some guy
named Jeffrey Epstein, in St. Thomas (one of the Virgin Islands), it was
filed on May 13, 2003. One of the areas he is attempted to file in is
magnetically encoded debit cards, computer software for use by merchants
that may be downloaded from a global computer network, smart cards and other
monetary instruments utilzing the computer and magnetic encoding devices.
In otherwords, someone is stealing our idea for using the credit card idea I
had and discussed with you for children to have their own prepaid credit
calling card and Google's allowance credit cards. REMEMBER? WE need to nip
this in the butt NOW and oppose it vigorously. I also learned from my
research that Google, Inc. YES! The search engine boys in CA., have opted to
start an entire new offshoot of their search engine and they have coined it
as: "Froogle". It's going to be another compture service entity. This
could have been applied for in case they anticipated any challenges that
could wipe them out with their current name "Google.com" and this is a
relatively new filing in Nov. of 2002 and it's still pending registration.
This name is very similar in sound to Oogle, Googles, and of course Zoogle.
If you take the "F" away from the name you have our name "Oogle" and this is
something we need to discuss with Ira to see if we should also challenge
this pending registration so that these Google boys know we are breathing
right down their backs every step of the way. We need to pressure them
while we can and not wait until the time to oppose has been concluded like

we did with or shall I say like Aurora did with the loss of the baked goods
trademark to someone who got smart and snuck in on us.  It's easy for Ira to
say to us, like he did, it's no biggie, we can  just buy them out.  That's
bullshit and you know it.  Something like that could be cost prohibited.
The time to challenge these sorts of actions is during the opposition phase
not afterwards.   I already informed you about "Oogles N' Googles" and I'm
glad I found that one in time for Ira to challenge for if I had missed that,
and with Ira never having mentioned it to us, we could have lost that one,
too and we'd really be in a mess.  Another new one popped up just recently
called:  GoogleGear!  I can't tell if this was approved for registration or
not.  Ira can do some research and find out because these boys are seeking
registration in ICC 09 (computer software and accessories, etc., computer
games, video games, and more).  This needs to be challenged, I believe, as
well.  That is unless they were granted a registration already.  And Google,
Inc., (Google.com boys), on May 31, 2002, applied for a trademark for the
word "Google" in ICC 035 (adwords, which is dissemination of advertising for
others via the internet.  I don't know if this has been granted registration
yet or not.  And there was a newcomer to the growing list of people who want
to capitalize ono this "Googlemania" craze and they are calling themselves:
"Shoggles".  They applied on May 8, 2003 for a registered trademark in ICC
009, for shower and bathing goggles for children to wear while bathing or
showering so the soap doesn't burn their eyes.  Great idea!  Something we
would have eventually gotten to as well.  Take away the "Sh" in Shoggles and
you get "Oggles".  Sound familar?  So this has been the extent of my
extensive research for Stelor and Silvers related to trademark issues and
there is much to talk about and act upon as you can clearly denote.  I'll
await hearing from you on all of this at your earliest convenienc.  Thanks
Steven

---

Protect your PC - get McAfee.com VirusScan Online
http://clinic.mcafee.com/clinic/ibuy/campaign.asp?cid=3963

Sun, Dec 12, 2004 5:30 AM

**Subject: Another Sleepless Night!**
**Date:** Thursday, April 15, 2004 7:22 PM
**From:** Steven Silvers <gewrue@hotmail.com>
**To:** <sesrig@stelorproductions.com>

Hi Steve:  I had another sleepless night just thinking of the potential of
what we now have in the palm of our hands.  We are at the center of making
history in more ways than one.  I hate looking at the cover of Time Mag with
those two yuppies gloating like the are.  I only wish that soon we'll have a
shot at bringing them down or better yet putting the fear of God in them.
If what the lawyers are telling you is in fact 100% accurate and I have no
reason to believe differently as I've preached that all along from back in
the Aurora days when I begged Mike to launch a Googles.com search engine and
free e-mail for kids and you know the rest of the story.  Anyway, I can't
impress upon you enough the import of timing this to coincide with the
upcoming Licensing Show.  If you can muster a PR firm by then to break the
news just before the show, say a day or two before and we get the media
blitz from CNN to AP and Reuters, etc., and the world now knows about us and
that we are going to be launching our very own child safe kids friendly
search engine called Googles.com the shit is going to hit the fan so fast
and the financial world will be in an uproar like you won't believe.  Then
our booth will be swamped by the media and everyone wanting to know who we
are and how it is that we came to be.  With the charcters there and the bags
and the music and the credibility factor dating back to 1996 and before
Google ever existed, there will be a lot of media frenzy, all to our
advantage.  So I'm only hoping and praying that we don't lose this opp and
that we go for it like we mean it and that's all I have to say for now.  I
trust you received my e-mail to you and the Board as you had asked of me.
Please send my check as promised and let's wrap up the transfers from your
GoDaddy account to mine ASAP so that we can put all this behind us as well.
Let me know when you want to handle this and let's just do it.  PG

Is your PC infected? Get a FREE online computer virus scan from McAfee®
Security. http://clinic.mcafee.com/clinic/ibuy/campaign.asp?cid=3963

# EXHIBIT C



## NATIONAL

## ARBITRATION

## FORUM

## COMPLAINT NOTIFICATION INSTRUCTIONS

### Forum Case Number FA0411000360710

1. **Notification.** You are hereby notified that an administrative proceeding has been commenced against you pursuant to the Uniform Domain Name Dispute Resolution Policy, adopted by the Internet Corporation for Assigned Names and Numbers (ICANN) on October 24, 1999 (Policy) (http://www.icann.org/udrp/udrp-policy-24oct99.htm). It concerns domain name(s) that are currently registered and being used by you. The Policy is incorporated by reference into your Registration Agreement with the Registrar(s) of your domain name(s). When you registered your domain name(s) you also agreed to submit to and participate in a mandatory administrative proceeding in the event that a third party (Complainant) submits a Complaint to an ICANN-approved dispute resolution service provider (http://www.icann.org/udrp/approved-providers.htm) concerning a domain name registered and being used by you.

2. **Date Complaint Received.** The Complaint was submitted by **Stelor Productions, Inc.** and was received on **11/8/2004** by the National Arbitration Forum (Forum). A copy of the Complaint accompanies this notification.

3. **Formal Requirements Compliance Review.** In accordance with Paragraph 4(a) of the Rules for Uniform Domain Name Dispute Resolution Policy (Rules) (http://www.icann.org/udrp/udrp-rules-24oct99.htm) and Paragraph 4 of the Forum's Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (Supplemental Rules) (http://www.arb-forum.com/domains/domain-rules.html) the Forum has verified that the Complaint satisfies the formal requirements of the Policy, Rules, and Supplemental Rules. Payment in the required amount to the Forum has been made by the Complainant.

4. **Commencement of Administrative Proceeding.** In accordance with Rules, Paragraph 4(c), the formal date of the commencement of the administrative proceeding is **11/19/2004**.

5. **Deadlines.** Within 20 days from the commencement date, the Forum must receive, a Response and all exhibits according to the requirements that are described in The Rules, Paragraph 5 and the Supplemental Rules. You must also serve these on the Complainant. Your Response and exhibits must be received by the Forum by **12/9/2004**. In the event the Complainant elects to have the dispute heard before a single-member Administrative

Panel, and you elect to proceed with a three-member Administrative Panel, this is also the date by which you must make the required additional payment.

6.    **Default.**  If your Response and/or required payment are not received by the above date, you will be considered in default. We will still appoint an Administrative Panel to review the facts of the dispute and to decide the case.  The Administrative Panel will not be required to consider a late-filed Response, but will have the discretion to decide whether to do so and, as provided for by Rules, Paragraph 14, may draw such inferences from your default as it considers appropriate. There are other consequences of a default, including no obligation on our part to consider any designations you have made concerning the appointment of the Administrative Panel or to observe any guidelines you have provided concerning case-related communications.

7.    **Administrative Panel.**  The dispute between you and the Complainant will be decided by an Administrative Panel consisting of either one or three impartial and independent decision makers who will be appointed by the Forum.  The Complainant in this administrative proceeding has elected an Administrative Panel consisting of:
[ ] A Single Member    [ X] Three Members  See below:

**A Single Member Panel.**  If the Complainant has selected the single-member option as indicated above, then the appointment of that Panelist will be made by the Forum from our published list of Panelists (http://www.arb-forum.com/domains/UDRP/rules.asp).  We will appoint a Panelist within 5 calendar days of when your Response was received or the date your Response was due.  The fees for this administrative proceeding have been paid in their entirety by the Complainant.

Despite the Complainant's election of a Single-Member Panel, you can still choose to have the case decided by an Administrative Panel consisting of three members.  If you choose this option, you will be required to pay half of the applicable fees for the Administrative Proceeding.  The payment must be made at the time you submit your Response. Failure to submit the required payment at that time may, along with other considerations, may be taken as grounds for proceeding with a Single-Member Panel.

If you choose a three-member Administrative Panel and make the required payment when you submit your timely Response, you should indicate the names and contact details of three persons in your Response.  These three persons can be selected from our published list or that of any other ICANN-accredited dispute resolution service provider http://www.icann.org/udrp/approved-providers.htm.  We will try to appoint one of the three persons you have recommended to the Administrative Panel. If we are unsuccessful, we shall make an appropriate appointment from our published list.  If you choose a three-member Administrative Panel, but do not provide us with the names and contact details of any candidates, we shall make the appointment from our published list.

Please note that if you choose a three-member Administrative Panel, the Complainant will also be requested to provide the names of three candidates who can be taken from our published list or that of any other ICANN-accredited dispute resolution service provider.

We will try to appoint one of these three persons to the Administrative Panel. If we are unsuccessful, we shall make an appropriate appointment from our published list. If the Complainant does not provide us with the names of its candidates, we shall make the appointment from our published list. Both you and the Complainant will be contacted concerning the procedures for the appointment of the Presiding Panelist (i.e., the third Panelist).

**Three-Member Administrative Panel.**   If the Complainant has selected the three-member Administrative Panel option as indicated above, then the Complainant has provided us with the names and contact details of three candidates to serve on the three-member Administrative Panel. We will try to appoint one of these three candidates. If we are unsuccessful, we shall make the appointment from our published list of Panelists.

You are kindly requested to provide the names and contact details of three persons in your Response. These three persons can be taken from our published list or that of any other ICANN-accredited          dispute          resolution          service          provider (http://www.icann.org/udrp/approved-providers.htm). We will try to appoint one of the three persons you have recommended to serve on the Administrative Panel. If we are unsuccessful, we shall make an appropriate appointment from our published list. If you do not provide us with the names and contact details of any candidates, we shall make the appointment from our published list. Please note that the fees for the administrative proceeding have been paid in their entirety by the Complainant. Both you and the Complainant will be contacted concerning the procedures for the appointment of the Presiding Panelist (i.e., the third Panelist).

8.   **Communications.** Your Response must be communicated to us according to the requirements of Rules, Paragraph 5(b) and Supplemental Rules, Paragraph 5 (i.e., one copy online or by e-mail and hard copy by fax or three or five sets of hard copies by mail). All case-related filings or submissions to the Forum after the submission of your Response must be made according to Supplemental Rules, Paragraph 7. In your Response you must indicate where and how you would like us to send case-related communications to you. Please provide only a single postal address, fax number, and e-mail address for you and, if applicable, your authorized representative for the dispute, otherwise we will use our discretion as to which contact details we will use.

All communications that are required to be made to the Complainant under the Rules and Supplemental Rules, including your Response, should be made according to the contact details and method(s) specified in the Complaint.

9.   **Fees.** Payment of the required fee for a three-member Administrative Panel, an extension request or the submission of additional documents, must be submitted with your Response. Payment methods and other relevant details about fees can be found in Paragraph 6, 7 and 16 of the Supplemental Rules.

10.   **The Administrative Proceeding.** If this case is to be decided by a single-member Administrative Panel, we shall appoint the Administrative Panel within five (5) calendar

days of when your Response was received or the date your Response was due. If the case is to be decided by a three-member Administrative Panel, we shall send to you and to the Complainant a list of five (5) candidates for the Presiding Panelist. You will each be offered the opportunity to strike two from that list. We shall make the appointment of the Presiding Panelist and take into consideration the preferences indicated by you and the Complainant.

The Administrative Panel will have 14 days from the date of its appointment to issue a decision in the case. Under normal circumstances, we will forward the decision to you, the Complainant, the concerned Registrar(s) and ICANN within three calendar days of receiving it from the Administrative Panel. The Registrar(s) will notify all parties concerned of the date that the decision will be implemented if the Registrar(s) does not receive notification and the required documentation from you in accordance with Paragraph 4(k) of the Policy. We will then post the decision on a publicly accessible web site, unless we have been directed not to by the Administrative Panel.

11. **Case Coordinators**. The Forum has appointed a Case Coordinator to be in charge of administering your case. Please note that, while the Case Coordinator is available to answer questions relating to such matters as filing requirements and to help you to understand the Policy, Rules and Supplemental Rules, the Coordinator cannot provide you with any legal advice or make any representations on your behalf.

| | |
|---|---|
| Case Coordinator: | Alexandra L Rosenbaum Johnson |
| Regular Mailing Address: | National Arbitration Forum<br>P.O. Box 50191<br>Minneapolis, MN 55405 USA |
| Fed-Ex Mailing Address: | National Arbitration Forum<br>500 Rosedale Towers<br>1700 West Highway 36<br>Roseville, MN 55113 USA |
| | Telephone:    (800) 474-2371<br>Fax No.:    (651) 604-6778<br>E-Mail Address:    arosenbaum@arb-forum.com |

12. **Additional Information**. Additional information about the ICANN administrative procedure is available at http://www.icann.org and about the National Arbitration Forum at http://www.arbitration-forum.com. Online Response filing is available at www.arbitration-forum.com.

# EXHIBIT D



## NATIONAL
## ARBITRATION
## FORUM

| | |
|---|---|
| Steven A. Silvers<br>8983 Okeechobee Blvd.<br>Suite 202<br>PMB 203<br>West Palm Beach, FL 33411<br><br>**(Complainant)**<br><br>v.<br><br>Google Inc.<br>2400 Bayshore Parkway,<br>Mountain View, California<br><br>**(Respondent)** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**Domain Names In Dispute:**
google.com
googlesadsense.com
googlesadwords.com
googles-adwords.com

## NOTICE OF WITHDRAWAL OF COMPLAINT

Mr. Steven Silvers, Complainant, pursuant to Forum Supplemental Rule 12, files this

Notice Of Withdrawal Of Complaint and requests that all proceedings filed by Mr. Rubinstein on

behalf of Mr. Silvers be dismissed. (A copy of Complaint is attached as Exhibit A).

As stated in the attached Declaration (attached as Exhibit B), Mr. Silvers has not retained

Mr. Rubinstein to represent him, has never heard of Mr. Rubinstein, and had no knowledge of

this Complaint until advised by Respondent Google, Inc., of the pendency of this action. Mr.

Silvers does not dispute Google, Inc.'s right to use the domain name Google.com, and

LAW OFFICES KOZYAK TROPIN & THROCKMORTON, P.A.
2525 PONCE DE LEON, 9TH FLOOR, CORAL GABLES, FLORIDA 33134-6037 · TEL. (305) 372-1800

respectfully requests that this action be dismissed, and that the Forum sanction Mr. Rubinstein

for initiating this unauthorized action.

## CERTIFICATION

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via e-mail

and telecopy on this 12th day of November, 2004, upon counsel for Complainant, Yano L.

Rubinstein, Esq. 580 California Street, 16th Floor, San Francisco, CA 94104.


Respectfully Submitted,


Gail A. McQuilkin, Esq.
Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9th Floor
Coral Gables, FL 33134
Tel: (305) 372-1800
Fax: (305) 372-3508


*Exhibits attached herein. ICANN Rule 3(b)(xv).*

246302.1

# EXHIBIT E

## Kozyak Tropin & Throckmorton, P.A.
2525 Ponce de Leon, 9ᵗʰ Floor
Coral Gables, Florida 33134

Gail A. McQuilkin
gam@kttlaw.com

Telephone (305) 372-1800
Fax (305) 372-3508

<u>Via Fax: 415-651-9853</u>

November 16, 2004

Yano Rubinstein, Esq.
Summers Rubinstein
580 California Street, 16ᵗʰ Floor
San Francisco, California 94104

        Re:     Steven A. Silvers

Dear Mr. Rubinstein:

        You fail to grasp the seriousness of what you are doing. There is no language anywhere in the License between Mr. Silvers and Stelor that permits Stelor to retain you as Mr. Silver's counsel, or to file actions in the name of Mr. Silvers. It is absurd to think otherwise. You need to read the License carefully because you are setting yourself up for serious consequences.

        Paragraph VIII (A) of the License gives Stelor the right to file and execute documents to seek, maintain and obtain Intellectual Property Rights on behalf of Mr. Silvers. This does not give Stelor the right to file actions in the name of Mr. Silvers. You yourself make this point in your letter where you state that Silvers is not authorized to institute legal proceedings. If Stelor wants to file an action it deems appropriate to defend the Intellectual Property Rights licensed to it under the License it may do so, but only in its own name even if it brings the action "on behalf of" Mr. Silvers. Moreover, a domain name dispute not does require that a domain name registrant be the party that files a complaint. Anyone may bring a complaint to challenge a domain name. Stelor's decision to file a domain name dispute complaint in Mr. Silvers' name rather than its own is an obvious attempt to harass Mr. Silvers, and discredit him with Google. Unfortunately this ploy served only to further discredit Stelor, and alienate Google from any discussion to resolve the core trademark dispute pending in the USPTO.

        Furthermore, you cannot respond to an action filed against Mr. Silvers personally under any circumstance without his express authorization. Paragraph XII(C) of the License acknowledges this. And, both you and Stelor have been told on numerous occasions that Mr. Silvers has retained his own counsel. Further, you must be aware by now that Stelor has sued Mr. Silvers. That makes Silvers and Stelor adverse. Please explain to me how you can hold yourself out as representing Mr. Silvers, and then send letters and contact third parties such as Google, Inc. claiming to be Stelor's attorney. That is a clear conflict of interest and a practice I am sure the California Bar prohibits. Frankly, it is beyond my ability to understand how any practitioner would consider it wise or appropriate to take any action in the name of someone who

Page 2

has not personally retained you, especially after learning he does not want you to represent him. Perhaps you should speak to your professional liability carrier to learn of the huge potential for incurring a malpractice claim under such circumstances.

Finally, there is absolutely nothing that prevents Mr. Silvers as the owner of all of the intellectual property relating to Googles from negotiating with a third party to sell his rights. Please read paragraphs VIII (B)(C) and (D) of the License where Stelor acknowledges the rights retained by Mr. Silvers.   Mr. Silvers intends to continue to negotiate with Google, and anyone else, interested in acquiring his rights.  In the meantime, since you have failed to heed our warnings, we are filing an action to enjoin you.

Sincerely,

Gail A. McQuilkin

/246352.1

# EXHIBIT F

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| STELOR PRODUCTIONS, INC., <br> (a Delaware Corporation) <br><br>             Plaintiff <br>      v. <br><br> STEVEN A. SILVERS, <br> (a resident of Palm Beach County, Florida). <br><br>             Defendant. | ) <br> ) <br> ) CASE NO. 04-80954–CIV–HURLEY <br> ) <br> ) Magistrate: Judge James M. Hopkins <br> ) <br> ) <br> ) <br> ) |

---

### DECLARATION OF STEVEN A. ESRIG

I, Steven A. Esrig, hereby submit my declaration in support of Plaintiff's Reply to Defendant's Response to Stelor's Motion for Preliminary Injunction, and declare as follows:

#### REPLY TO DEFENDANT'S RESPONSE TO
#### PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

1. I am the President and CEO of Stelor Productions, Inc. ("Stelor"). I have been employed by Stelor since its inception, and I have held my current position for more than two years. The facts stated herein are based on my own personal knowledge.

2. Throughout my relationship with Defendant, Mr. Steven A. Silvers ("Defendant or "Silvers"), he has been in constant financial hardship. Mr. Silvers has implored me time and time again to pursue Google Inc. in a legal action to end his financial hardship. Furthermore, Mr. Silvers has beseeched me to provide false verification of employment for the purpose of securing a loan, apparently due to his lack of credit and financial resources. To the best of my knowledge and belief, Mr. Silvers has no current income.

Accordingly, he is "judgment proof" in that he would be financially incapable of satisfying any order for damages.

3.  Silvers interference with Stelor's business has resulted in the forestalling of the development of the Googles from Goo concept.  Due to such interference, the operations of Stelor, a company with a projected valuation of over $700 million, have come to little more than a crawl. If prevented from continued interference, Stelor will be able to begin to immediately engage in negotiating licensing deals worth millions of dollars. Stelor has paid Mr. Silvers approximately $190,000 for his consulting services relative to the GOOGLES IP. As Mr. Silvers has thus far failed to provide any consulting services whatsoever, he has further damaged Stelor by accepting payment for such unearned services. Stelor, as a start-up company, can ill-afford such financial loss without recompense.

> //
>
> //
>
> //
>
> //
>
> //
>
> //
>
> //
>
> //
>
> //
>
> //
>
> //

I declare under penalty of perjury under the laws of the State of Florida that the foregoing is true and correct to the best of my knowledge, information and belief.

Steven A. Esrig