FILED by _____ D.C.
ELECTRONIC

Jan 10 2005

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

STELOR PRODUCTIONS, INC.,
(a Delaware Corporation)

                                    CASE NO. 04-80954–CIV–HURLEY

                                    Magistrate: Judge James M. Hopkins

                    Plaintiff

        v.

STEVEN A. SILVERS,
(a resident of Palm Beach County, Florida).

                    Defendant.

_____

## PLAINTIFF'S UNOPPOSED MOTION TO VACATE ORDER RECASTING DEFENDANT'S OPPOSITION TO *PRO HAC VICE* APPEARANCE OF ATTORNEY RUBINSTEIN

Plaintiff, Stelor Productions, Inc. ("Stelor"), by and through undersigned counsel, hereby respectfully moves on the following grounds for an order vacating the Court's December 29, 2004 Order Recasting Defendant's Opposition to *Pro Hac Vice* Appearance of Attorney Rubinstein as Motion to Disqualify & Order Directing Briefing on Motion ("Order") [DE 41]:

1.      Defendant's Opposition resulted in an expedited conference call hearing before Magistrate Hopkins on the afternoon of December 14, 2004.  Based on the Opposition, Defendant's had refused to allow Plaintiff (with Mr. Rubinstein as counsel) to proceed with the deposition of Defendant.  Magistrate Hopkins, accordingly, agreed to address the issue, and scheduled the telephonic hearing for that afternoon.

2.      At the hearing, the Magistrate heard extensive argument by the parties on the issue of disqualification raised in Silvers' Opposition.  (A true and correct transcript of the hearing is attached hereto as Exhibit "A").  The Magistrate then took a recess to consult with his law clerk, reconvened the hearing, and announced his ruling "granting the Motion for Admission Pro Hac Vice." Tr. at 37:5-6.

3.    A formal order granting the motion to appear pro hac vice was then issued by the Court dated December 15, 2004 [DE 35], a true and correct copy of which is attached hereto as Exhibit "B". An order granting motion for substitution of counsel, approving Mr. Rubinstein's appearance as new counsel for the Plaintiff, was also entered on December 16, 2004 [DE 36], a true and correct copy of which is attached as Exhibit "C".

4.    Defendant has raised no further issue relating to the Magistrate's decision at the December 14th hearing, or the subsequent orders dated December 15 and 16, 2004.

5.    Defendant has been advised of the relief requested in this motion and does not oppose it.

6.    Accordingly, Stelor respectfully suggests that the issue raised by Defendant's Opposition has already been addressed and decided, and no need exists for further briefing by the parties or further action by the Court on that issue. Stelor requests that the Order be vacated.

7.    Alternatively, Stelor requests that time for Plaintiff to file a response pursuant to the Order be enlarged until ten (10) days after disposition of this motion to vacate.

WHEREFORE, Stelor respectfully requests entry of an order vacating the December 29th Order.

Respectfully Submitted,

Attorneys for Plaintiff,
STELOR PRODUCTIONS, INC.

Yano L. Rubinstein, Esq.
SUMMERS RUBINSTEIN, P.C.
580 California Street
16th Floor
San Francisco, California 94104
Tel:  (415) 439-4816
Fax:  (415) 651-9853

-- and --

2

Burlington, Weil, Schwiep,
 Kaplan & Blonsky, P.A.
2699 South Bayshore Drive - PH
Miami, Florida 33133
Tel:  (305) 858-2900
Fax: (305) 858-5261

By: _____
        Kevin C. Kaplan, Esq.
        Florida Bar No. 933848

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was served this 7th day of

January, 2005, via telefax and US Mail on:

| | |
|---|---|
| Gail M. McQuilkin, Esq. | Adam T. Rabin, Esq. |
| Kozyak, Tropin & Throckmorton, P.A. | Dimond, Kaplan & Rothstein, P.A. |
| 2525 Ponce de Leon, 9th Floor | 200 Southeast First Street |
| Coral Gables, Florida 33134 | Suite 708 |
| Tel: (305) 372-1800 | Miami, Florida  33131 |
| Fax: (305) 372-3508 | Tel:  (305) 374-1920 |
| | Fax:  (305) 374-1961 |

_____
Kevin C. Kaplan, Esq.

1

```
 1              UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF FLORIDA
 2

 3          CASE NO:   04-80954-CIV-HURLEY

 4       Magistrate Judge James M. Hopkins

 5

 6   STELOR PRODUCTIONS, INC.,
     a Delaware corporation,
 7
          Plaintiff,
 8
     vs.
 9
     STEVEN A. SILVERS, a resident
10   of Palm Beach County, Florida

11       Defendant.
     _____/
12
                           Suite 900
13                         2525 Ponce de Leon Boulevard
                           Coral Gables, Florida
14                         Tuesday, 3:18 p.m.
                           December 14, 2004
15

16

17

18            CONFERENCE CALL HEARING

19

20

21

22

23       This cause came on for hearing before the

24   Honorable Magistrate Judge James M. Hopkins, via

25   speaker telephone conference call.
```

"A"

2

```
 1   APPEARANCES:

 2       KEVIN C. KAPLAN, ESQUIRE
         BURLINGTON WEIL SCHWIEP
 3       KAPLAN & BLONSKY, P.A.
         Penthouse
 4       2699 South Bayshore Drive
         Miami, Florida  33133
 5       Attorneys for Plaintiff
         (Appearing Telephonically)

 6

 7       YANO L. RUBINSTEIN, ESQUIRE
         SUMMERS RUBINSTEIN, P.L.C.
 8       Suite 1600
         580 California Street
 9       San Francisco, California  94104
         Attorneys for Plaintiff
10       (Appearing Telephonically)

11

12       GAIL A. McQUILKIN, ESQUIRE
         KOZYAK TROPIN & THROCKMORTON, P.A.
13       Suite 900
         2525 Ponce de Leon Boulevard
14       Coral Gables, Florida 33134
         Attorneys for Defendant

15

16       ADAM T. RABIN, ESQUIRE
         DIMOND KAPLAN & ROTHSTEIN, P.A.
17       200 Southeast First Street
         Suite 708
18       Miami, Florida  33131
         Attorneys for Defendant

19

20   ALSO PRESENT:  DONNA ENG, ESQUIRE

21                  STEVEN ESRIG

22                  (Both appearing Telephonically)

23

24

25
```

3

1   Thereupon:

2           THE COURT:  This is Judge Hopkins, and I

3   have one of my law clerks, Donna Eng, on the line as

4   well.

5           MS. McQUILKIN:  Thank you.

6           This is Gail McQuilkin, and with me is

7   Adam Rabin --

8           MR. RABIN:  Hi, Judge.

9           MS. McQUILKIN:  -- who is our co-counsel.

10          Do you have Stelor's counsel on the line?

11          THE COURT:  I do not.

12          MS. McQUILKIN:  They told me that they

13  decided not to come to our conference room, and went

14  and found another local counsel.  Apparently, Stan

15  Beiley is no longer going to be their local counsel.

16          They are sitting in a conference room over

17  at Burlington Weil, and I have that phone number.

18  They had asked if you could patch them in.

19          THE COURT:  I can only do two at once, and

20  I have two on the line now, Donna Eng and you.

21          MS. McQUILKIN:  All right.

22          THE COURT:  Do you have the ability to

23  conference in another?

24          MS. McQUILKIN:  I do.  Give me your number

25  in case I have to conference you back.  I'm pretty

4

1    good at this.

2        THE COURT:  Well, if you are going to

3    conference me back --   Well, yes, you can do that, I

4    suppose.

5        MS. McQUILKIN:  What is the number in case

6    we're disconnected?

7        THE COURT:  Good question.  I'll find out.

8    Let me see.  Hold on one second.

9        Okay.  If there is a problem, you can call

10   me at 772 area code, and the number is 466-0560.

11       MS. McQUILKIN:  All right.  I'm sure I can

12   do this without having a problem, so hang on.  There

13   will be some silence.

14       THE COURT:  Okay.

15       (Mr. Kaplan, Mr. Rubinstein and Mr. Esrig

16   were conferenced in on the call)

17       MS. McQUILKIN:  Your Honor, are you there?

18       THE COURT:  Yes, I am.

19       MS. McQUILKIN:  Kevin Kaplan, are you

20   there?

21       MR. KAPLAN:  Hello, Your Honor.

22       MS. McQUILKIN:  Yes, we are all here, Your

23   Honor.

24       THE COURT:  Good afternoon.

25       MR. RUBINSTEIN:  Good afternoon, Your

5

1    Honor.  This is Yano Rubinstein.

2            MS. McQUILKIN:  One housekeeping issue.

3    Because we're on speaker phone, and I have the court

4    reporter with me, people are going to need to speak

5    up.  Also, because we have more than one male voice

6    in this, when you speak you are going to have to

7    identify who is speaking.

8            THE COURT:  Very well.  This is the Judge.

9            As I indicated earlier, we have been

10   designated by Judge Hurley to decide the Motion to

11   Appear Pro Hac Vice.

12           I have just now been handed some documents

13   that consist of, apparently, some of the information

14   about the motion, and possibly the response.

15           Considering the fact that neither I nor my

16   law clerk have seen these before the hearing, I think

17   it probably is a good idea for you all to make your

18   record and inform us of the basis for your position.

19           I would say that the party challenging the

20   pro hac vice appearance should be the party to

21   commence.

22           MS. McQUILKIN:  All right.  Your Honor, it

23   is Gail McQuilkin of the firm Kozyak Tropin &

24   Throckmorton on behalf of defendant, Steven Silvers,

25   and with me is Adam Rabin of the firm of Dimond

6

1    Kaplan, who is co-counsel in this matter.

2            Your Honor, we filed, and I hope you do

3    have our opposition to the Motion to Appear Pro Hac

4    Vice which was filed by Mr. Stan Beiley to admit

5    Mr. Rubinstein as co-counsel for Stelor Productions,

6    the plaintiff in this matter.

7            As Your Honor is aware, there are multiple

8    proceedings, and I'm not going to belabor that

9    because I believe you indicated you understand the

10   different matters that are pending in the United

11   States Trademark Office, et cetera, and how they

12   relate to this case.

13           THE COURT:  Well, you might state what the

14   matters are and how they relate, in particular the

15   matter or matters where the attorney, Mr. Rubinstein,

16   who is seeking admission pro hac vice, previously

17   represented opposing counsel -- excuse me -- your

18   client.  Because as I see it, the standards for a

19   conflict of interest problem, which is what the basis

20   of your objection is as I understand it, is whether

21   or not the present and past representations are

22   substantially related.

23           MS. McQUILKIN:  Correct.

24           THE COURT:  So why don't you go ahead down

25   that road.

7

1          MS. McQUILKIN:  All right.  Let me try to

2     give you the procedural history, which will help you

3     to understand this.

4          Steven Silvers is a licensor with a

5     license agreement executed with Stelor Productions.

6          There are some proceedings in the United

7     States Patent and Trademark Office that preceded the

8     current action that we are here on.  One was an

9     opposition to a registration filed by Stelor

10    Productions against Google, Inc., the search engine.

11    Mr. Silvers is not involved in that case.

12          Then there was also a proceeding filed by

13    Stelor to cancel Google's trademarks filed in the

14    Patent and Trademark Office.  Mr. Silvers is not in

15    that matter.

16          However, Google filed a separate action in

17    the United States Patent and Trademark Office to

18    cancel Mr. Silvers' trademark for the name Googles,

19    which is part of the intellectual property that was

20    licensed to Stelor.  And that proceeding has a

21    cancellation number, or a Cancellation Proceeding

22    Number, and that is Proceeding 92043737 pending

23    before the Trademark Trial and Appeal Board.  In that

24    action, Mr. Silvers is named individually.  Stelor

25    was not named as a party at all.

8

1          Mr. Rubinstein filed a notice of

2    appearance, of counsel, and power of attorney to

3    represent defendant, Steven Silvers in that action.

4          These documents that I'm referring to,

5    Your Honor, are also attached to our opposition.  The

6    one I'm referring to now is Exhibit A, and they are

7    going to go in order, B, C, D, as I explain this.

8          Mr. Rubinstein also filed in that action

9    an answer on behalf of Steven Silvers, and then filed

10    shortly after that an amended answer and then a

11    counterclaim against Google in that action.

12          We have had some conversations with

13    Mr. Rubinstein, advising him of the conflict in this,

14    because while all this was going on, Stelor filed the

15    district court action against Steven Silvers which is

16    pending before Your Honor.

17          Mr. Rubinstein, after this federal court

18    action was filed, filed his notice of appearance and

19    filed his answer in the cancellation proceeding.

20          We had some conversations with him, and he

21    eventually did file a notice of withdrawal of power

22    of attorney in that action.  However, the Trademark

23    Trial and Appeal Board has not issued any rulings on

24    that.

25          We also filed an answer on behalf of

9

1    Mr. Silvers in that action and asked that the

2    Trademark Trial and Appeal Board strike the answer

3    that was filed and the counterclaim that was filed by

4    Mr. Rubinstein.

5            And also, after this proceeding between

6    Stelor and Mr. Silvers in the district court, in

7    which we're obviously adverse, Mr. Rubinstein, on

8    behalf of Steven Silvers, files a proceeding with the

9    National Arbitration Forum to challenge Google's,

10   Google, Inc., the search engine's domain name.

11           We were notified of that only because

12   Google, Inc., who is our adversary in the

13   cancellation proceeding, called us to ask us why we

14   had filed that, or why our client had filed that.  We

15   did not know about that, and we asked that that be

16   dismissed, and we asked Mr. Rubinstein, who declined

17   to do that.

18           We filed a motion -- excuse me -- a notice

19   to withdraw the complaint, as Steven Silvers'

20   counsel.  Mr. Rubinstein then also filed an

21   opposition to that in the National Arbitration Forum,

22   and that is pending there at this time.  I confirmed

23   that this morning.

24           Which brings us to the current situation,

25   where we are setting up discovery in this matter,

10

1   which is pending before you, relating to the

2   injunction motion that is pending.

3           Up until just a few days ago, in this

4   particular action, we had been dealing with Stelor's

5   counsel of record, who has been Larry Hefter of

6   Finnegan Henderson in Washington, and local counsel,

7   Stan Beiley.

8           Mr. Hefter and his partner, Rob Litowitz,

9   scheduled depositions, noticed depositions under an

10  agreement, came down here over a week ago to take the

11  depositions.

12          We actually ended up spending that time,

13  we thought productively, in settlement discussions,

14  which ended in an impasse.  We weren't able to do

15  anything, and we rescheduled the depositions for

16  Monday and Tuesday of this week.

17          On Friday of last week -- meaning three or

18  four business days ago -- we received in the

19  afternoon a motion to appear pro hac vice filed by

20  Mr. Beiley in which he was asking to admit Yano

21  Rubinstein, although it does not say for the purposes

22  of the deposition.  It just says for the purpose of

23  being co-counsel.  Nowhere in the motion does it

24  disclose any type of representation by Mr. Rubinstein

25  of Mr. Silvers and these other pending matters.

11

1         We did not get a renotice of the

2    deposition for today filed by anybody, although we're

3    not objecting, you know, to the deposition on that

4    basis.  However, we received this morning, on the day

5    of the deposition of Mr. Silvers, a renotice of the

6    deposition at 10 o'clock this morning, signed by

7    Mr. Beiley, with no mention of Mr. Rubinstein

8    anywhere in this.

9         Yesterday, when Mr. Rubinstein appeared to

10   defend Mr. Esrig's deposition -- and Mr. Esrig is the

11   principal of Stelor -- we objected on the record,

12   saying that we were opposing his motion for pro hac

13   because he formerly represented Mr. Silvers in the

14   USPTO action, and he is currently still counsel of

15   record in the domain action, and is fighting us to

16   continue to represent Silvers in that action.  We put

17   that on the record, told him we were opposing that,

18   and that he could proceed at his risk, that the

19   deposition may be stricken for his appearance.

20        They went ahead, took that deposition, and

21   we filed the opposition to the pro hac this morning,

22   or a little later on, maybe late morning, and

23   attached everything that we have told you about to

24   it.

25        We are of the position that as long as

12

1   Mr. Rubinstein is actively representing Mr. Silvers,

2   that he cannot represent Stelor in this adverse

3   position in this action.

4           Our client specifically has not authorized

5   us in any way to waive the conflict and, in fact, has

6   expressly stated he does not consent to

7   Mr. Rubinstein representing him -- excuse me --

8   representing Stelor in this action.

9           So, it is our contention, Your Honor, at

10  this point, that our client has not waived, that

11  Mr. Rubinstein cannot represent both Mr. Silvers and

12  Stelor while they are adverse, and the fact that he

13  has tried to do this without giving us an opportunity

14  to at least challenge it before that we feel is

15  improper and, for that reason, he should not be

16  admitted.

17          MR. RUBINSTEIN:  Your Honor, this is Yano

18  Rubinstein, if I may respond.

19          THE COURT:  No.

20          MS. McQUILKIN:  Your Honor --

21          THE COURT:  Why don't you --  You have

22  another counsel there who is admitted, correct?

23          MR. RUBINSTEIN:  Correct.

24          MR. KAPLAN:  Judge, it is Kevin Kaplan

25  from the Miami law firm of Burlington Weil Schwiep

13

1   Kaplan & Blonsky.

2           We have just been contacted by

3   Mr. Rubinstein probably about an hour-and-a-half ago

4   to come in as local counsel in the case, and we're

5   just finalizing the details of our retainer to do

6   that, and we're prepared, you know, to come in and

7   pick up the representation.

8           Mr. Rubinstein is really intimately

9   familiar with these matters, and I think he really

10  needs to address the specific allegations that

11  opposing counsel is making, which I think are not

12  accurate.

13          I think the facts, at least as I

14  understand them in the hour-and-a-half that we spent

15  together, are that Mr. Rubinstein never actually

16  represented Mr. Silvers.  But I would ask that Your

17  Honor permit Mr. Rubinstein to explain those details,

18  because I think that's really required and

19  appropriate under the circumstances, and Stelor would

20  really be prejudiced if Mr. Rubinstein is not able to

21  present that.

22          THE COURT:  Does the other side have any

23  objection to Mr. Rubinstein making a statement?

24          MS. McQUILKIN:  Not at all, Your Honor.

25          THE COURT:  I have an issue with it, and

14

1    the issue that I have is that prior to an admission

2    pro hac vice being granted, this Court apparently has

3    no contempt authority over an applicant.

4        My solution to that is that I would have

5    Mr. Rubinstein be sworn in and make his

6    representations under oath.  Is there any objection

7    to that?

8        MS. McQUILKIN:  No, Your Honor.  It makes

9    sense, perfect sense.

10        THE COURT:  Okay.  And from Mr. Kaplan and

11   Mr. Rubinstein?

12        MR. RUBINSTEIN:  Yes, speaking.

13        THE REPORTER:  Who is speaking?

14        MR. RUBINSTEIN:  Mr. Yano Rubinstein.

15        THE COURT:  And what was your response?

16        MR. RUBINSTEIN:  That is perfectly

17   acceptable.

18        THE COURT:  Very well.  Would the court

19   reporter swear in Mr. Rubinstein, please.

20        THE REPORTER:  Your Honor, I am sorry.  I

21   am not in his presence.  I cannot do that over the

22   phone.

23        MR. KAPLAN:  Judge, I can have a notary in

24   our office swear in the witness.  This is Kevin

25   Kaplan.

15

```
1                    THE COURT:  Very well.

2                    MR. KAPLAN:  Okay.  Hold on one second,

3    please.

4                    (Brief hiatus in proceedings)

5                    MR. KAPLAN:  This is Kevin Kaplan again.

6                    Your Honor, I have got Mary Jane Palmero,

7    who is a notary public who can swear the witness in,

8    if that is acceptable to everybody.

9                    THE COURT:  Any problems from the other

10   side?

11                   MS. McQUILKIN:  Not at all.

12                   THE COURT:  Very well.  Proceed.

13                   MS. PALMERO:  Do you swear to tell the

14   truth --

15                   MS. McQUILKIN:  I'm sorry, Your Honor, the

16   court reporter cannot hear what is being said.

17                   MS. PALMERO:  Do you swear to tell the

18   truth, the whole truth and nothing but the truth?

19                   MR. RUBINSTEIN:  I do.

20                   (Yano Rubinstein was duly sworn)

21                   THE COURT:  Very well.  You may proceed,

22   Mr. Rubinstein.

23                   MR. RUBINSTEIN:  Great.

24                   Your Honor, Ms. McQuilkin is under -- she

25   believes that we currently represent Silvers in a
```

16

1    UDR -- UDRP action in front of the National

2    Arbitration Forum.  And if she did contact the

3    National Arbitration Forum this morning, she was

4    completely misinformed.

5         In fact, we have faxed to Your Honor and

6    to Ms. McQuilkin the case number that is referenced.

7    It is a very long number.  I'm not going to read it,

8    but it is attached as Exhibit B of the Declaration of

9    Yano Rubinstein.  And paragraph 2 states by whom the

10   complaint was submitted and specifies the complaint

11   was submitted by Stelor Productions, Inc.  And I will

12   testify under oath that Mr. Silvers is not a

13   complainant or a party in that filing.

14        What Ms. McQuilkin has is an earlier

15   attempted filing that never was commenced by the

16   Forum.  And once we became aware of Ms. McQuilkin's

17   issues with Stelor exercising its right under the

18   license agreement, we thought it would be prudent to

19   simply file it in Stelor's name.  But it was never

20   accepted in the name of Mr. Silvers.  In fact, I have

21   never actually represented Mr. Silvers in the

22   National Arbitration Forum.

23        Ms. McQuilkin is correct, in the TTAB

24   action we did file a response in the name of Silvers,

25   as is permitted in the license agreement that is in

17

1    dispute.

2         However, once she gave us notice that she

3    had difficulty with that as well, we immediately

4    withdrew, and we do not actively represent him in

5    that matter either.  In fact, we do not represent

6    Mr. Silvers in any matter.

7         What Ms. McQuilkin has said previous to my

8    statement is that her problem is that we actively

9    represent Mr. Silvers, and as long as we do that, she

10   doesn't want me to represent Stelor, because she

11   feels that we are adverse.  However, since there is

12   no active representation, I really don't see that she

13   has a position.

14        I would like to refer to a declaration of

15   Steven A. Silvers, which is the last exhibit

16   attached, that I faxed.  That says in paragraph 3:

17        I have never met or spoken with Yano

18        Rubinstein; I have not retained him to act on

19        my behalf in any matter, including providing

20        legal services for me; I have not authorized

21        him to initiate any proceedings on my behalf,

22        nor to file the above-described action.

23        That is referring to a TTAB action.

24   Actually, that is inaccurate.  But it is accurate

25   that I have never, except for yesterday's deposition

18

1    where I was defending Stelor Productions, I have

2    never seen or met Mr. Silvers, and I certainly do not

3    have any sort of confidential, proprietary

4    information, and there is no actual conflict.

5            Finally, I would like to say that the

6    license dispute and the trademark cancellation

7    opposition proceedings are not substantially similar

8    in any way, and do not even meet the minimum

9    threshold required for any sort of disqualification

10   based on conflict of interest.

11           THE COURT:  Why are they not similar,

12   substantially similar?

13           MR. RUBINSTEIN:  Well, the Trademark Trial

14   and Appeal Board case involves a dispute between

15   Google, Inc. and Steven Silvers over whether or not

16   the two marks, Google and Googles, are infringing

17   upon each other, or whether one has a right to file

18   the other.  Whereas the license dispute is simply a

19   dispute over the terms of two agreements, one is a

20   licensing agreement, one is a consulting agreement.

21   It has nothing to do with any sort of trademark

22   infringement or likelihood of confusion.

23           One is a contract dispute, the other one

24   is an intellectual property trademark dispute.

25           THE COURT:  And what is the reply from the

19

1    other side?

2              MS. McQUILKIN:  Your Honor, first --

3    Well, several things.  Number one is, I think the

4    standard is not substantially similar, it is

5    substantially related.

6              THE COURT:  It is substantially related,

7    correct.

8              MS. McQUILKIN:  Right.

9              The injunction motion itself is asking the

10   Court for relief to prevent Mr. Silvers' involvement

11   in any of these proceedings.  They are highly

12   related.

13             If you look at the real guts of the

14   dispute that is before us, really the matters at

15   heart is what is going on in these proceedings

16   against Google, the search engine.  So it is very

17   much related.

18             Number two --

19             THE COURT:  How is that?  Can you explain

20   that some more?

21             MS. McQUILKIN:  Sure.

22             They have asked in their injunction for

23   Mr. Silvers not to be involved in any of these

24   proceedings that have been brought by Stelor and to

25   not defend himself in the action that was brought by

20

1    Google.  Their basis for that is the license

2    agreement, which they feel that they have the right

3    to go around and file things in Mr. Silvers' name,

4    and if Mr. Silvers is sued, to jump in and defend

5    Mr. Silvers in lieu of Mr. Silvers hiring his own

6    counsel.

7         And those proceedings and what is

8    happening in those proceedings are very much a part

9    of what they are asking relief for in the injunction

10   that is pending.  And it also forms a factual basis

11   for contentions on both sides of the breaches at

12   issue, because Mr. Silvers has filed a counterclaim

13   on breach of not only his consulting agreement, but

14   the license agreement as well.

15        These are all factual issues, these

16   proceedings that are involved in that.

17        THE COURT:  What is the response from the

18   other side to that argument?

19        MR. RUBINSTEIN:  One is a trademark

20   dispute and the other is a contract dispute.  And

21   whether the two are related or not, there has been no

22   actual representation by myself of Mr. Silvers in the

23   context of the National Arbitration Forum, and --

24        THE COURT:  I am not talking about the

25   National Arbitration Forum.

21

```
1              MR. RUBINSTEIN:  What's that?
2              THE COURT:  I am not talking about the
3    National Arbitration Forum.  We're talking about the
4    Trademark Trial and Appeal Board.
5              MR. RUBINSTEIN:  Right.
6              Ms. McQuilkin mischaracterizes what is in
7    dispute in the license agreement and the consulting
8    agreement, whether or not there is any sort of
9    infringement, or whether there is a likelihood of
10   confusion, which are all elements in the TTAB
11   proceedings.  None of them are addressed in the
12   contract licensing dispute between Silvers and
13   Stelor.
14             THE COURT:  Well, what about the fact --
15             Isn't it a fact that Mr. Silvers' ability
16   to defend himself in the Google action, isn't that a
17   part of the instant case?
18             MR. RUBINSTEIN:  Yes, but we're asking for
19   an interpretation of the terms of the license
20   agreement.  We're not asking for any sort of
21   determination of a likelihood of confusion, which is
22   the basis for the Trademark Trial and Appeal Board
23   cases, which I have, again, filed a notice of
24   withdrawal for and do not actively represent
25   Mr. Silvers in.  Yes.
```

22

1           THE COURT:  What other points do you have,

2     Ms. McQuilkin?

3           MS. McQUILKIN:  Yes.  I just wanted to

4     make the point that, you know, part of the relief

5     that they are asking for is that he not be able to

6     speak to Google at all about anything.  They have

7     asked basically for a gag order.

8           So, not only does it relate to the

9     cancellation proceeding, it relates to his rights as

10    owner of the trademark under this license agreement.

11          The other point I wanted to make is just a

12    clarification on the National Arbitration

13    Association.  What I was told this morning is that

14    the proceeding is going forward.

15          If Mr. Rubinstein has, in fact, changed

16    that or has withdrawn, I'm not aware of that.  But we

17    still stand by the position that even if it was

18    former representation, he is precluded under the

19    Rules of Professional Conduct 4-1.7 as having a

20    conflict of interest that my client does not want to

21    waive.

22          THE COURT:  And you are still talking

23    about the Trademark Trial and Appeal Board case,

24    right?

25          MS. McQUILKIN:  Yes, that as well.  Yes,

23

```
 1    absolutely, that one more than anything.
 2             THE COURT:  Right.
 3             Well, it seems to me that under the
 4    standard enunciated in Freund versus Butterworth,
 5    165 F.3d 839, the seminal conflict of interest case
 6    in the 11th Circuit, that the matters that
 7    Mr. Rubinstein previously represented Mr. Silvers on
 8    are substantially related to the instant case.  And
 9    on that basis, if we can construe Ms. McQuilkin's
10    motion as a motion to disqualify counsel -- because
11    I'm not sure whether or not the same standards apply
12    to a motion to appear pro hac vice.  In essence, it
13    seems to me that the motion is a motion to disqualify
14    counsel for having a conflict of interest.  So,
15    boiling it down to its essence, it seems to me that
16    the motion should be granted.
17             MR. KAPLAN:  Judge, it is Kevin Kaplan,
18    the local counsel.
19             I just want to confirm for the record, we
20    have made -- or Mr. Rubinstein has presented
21    testimony that there never was an attorney-client
22    relationship between him and Mr. Silvers.  I just
23    want to --
24             THE COURT:  Well, I don't think that is
25    true.
```

24

1              MR. KAPLAN:  Okay.

2              THE COURT:  I don't think that is what he

3    said.

4              MR. KAPLAN:  He is here still under oath.

5              MR. RUBINSTEIN:  Yes, Your Honor.  There

6    was never an attorney-client relationship between

7    myself and Mr. Silvers and, in fact, Mr. Silvers'

8    affidavit agrees with that.

9              THE COURT:  Well, are you saying that your

10   representation of him, your former representation of

11   him in front of the Trademark Trial and Appeal Board

12   is not an attorney-client relationship?

13             MR. RUBINSTEIN:  Your Honor, the

14   representation of him in the Trademark Trial and

15   Appeal Board was under the license agreement which

16   grants us, the licensee, the sole right, at its

17   expense, to act on the behalf of and in exclusivity

18   of Mr. Silvers.

19             THE COURT:  So it is your contention that

20   that did not create an attorney-client relationship?

21             MR. RUBINSTEIN:  Given that I have never

22   actually spoken with, shared information and met

23   Mr. Silvers, I felt that the scope of the

24   relationship, if you want to call it that, was simply

25   limited to protecting Stelor, who retained me under

25

1    the license agreement's property.  A right of

2    subrogation, if you will.

3            THE COURT:  Ms. McQuilkin, what is your

4    position on that?

5            MS. McQUILKIN:  Well, my position is that

6    this was an action that Stelor was not named in.  It

7    was brought against Mr. Silvers as an individual, not

8    as a licensee, not as a licensor, as an individual,

9    as the owner of intellectual property.

10            Mr. Rubinstein filed an action on behalf

11    of Steven Silvers -- excuse me -- he filed an answer

12    and a counterclaim.  He did not file it in any other

13    capacity, except as an answer and a counterclaim

14    against Google on behalf of Mr. Silvers.  That is

15    representation.

16            MR. RUBINSTEIN:  And, Your Honor, if I may

17    respond.

18            We have since withdrawn our

19    representation, and there is currently pending a

20    motion to intervene by Stelor under the rights

21    granted in the license agreement to defend its

22    property against Google, Inc.'s cancellation.

23            THE COURT:  Oh, I understand that, but I

24    don't find that to be persuasive, because the law

25    talks about former representation.  So, the only

26

1    remaining issue is whether or not there was former

2    representation.

3              MR. KAPLAN:  Judge, it is Kevin Kaplan

4    again.  If I can make a quick legal argument here.

5              Mr. Silvers and his current counsel took

6    the position that Mr. Rubinstein did not represent

7    Mr. Silvers, had no authority to represent

8    Mr. Silvers in that proceeding, and demanded that any

9    confusion or lack of clarification about that be

10   immediately addressed by Mr. Rubinstein.  He did.  He

11   withdrew the pleading and confirmed that position.

12             So, if that's the situation here, they are

13   now estopped from taking the position, the contrary

14   position, if you will, that Mr. Rubinstein, in fact,

15   did represent Mr. Silvers.

16             They said all along Mr. Rubinstein did not

17   represent Mr. Silvers, had no authority to do that.

18   And now that Mr. Rubinstein is trying to represent

19   Stelor in this action adverse to Mr. Silvers, they

20   are now advancing the exact opposite position,

21   because they are trying to prejudice Stelor by

22   preventing the plaintiff from having the counsel

23   continue in this case that has been their advisor all

24   along with respect to these matters.  That is just

25   not fair.

27

1          THE COURT:  What is your response to that,

2    Ms. McQuilkin?

3          MS. McQUILKIN:  Well, Your Honor, first of

4    all, I think that there is a huge appearance of

5    impropriety if they are taking the position or if

6    Mr. Rubinstein is taking the position, I filed

7    something on behalf of Mr. Silvers and he never

8    authorized me to do this.  I just, you know, I just

9    did it to put myself in the position of representing

10   him, unbeknownst to him.  I think that's rather

11   inappropriate.

12         Second, whether or not it was authorized,

13   it is still representation.

14         Even if Stelor, as the licensee, had the

15   right to do that and filed this in the name of Steven

16   Silvers, and they were hand-in-hand in this, it is

17   still representation.  It is sort of like a couple

18   who hires an attorney, one attorney to represent them

19   to draft a prenuptial, and then they become adverse

20   and they are now in divorce proceedings.  The

21   attorney who represented them both when they were

22   together drafting the prenuptial cannot now take

23   sides and say, okay, I will represent one to the

24   exclusion of the other.  You can't do that.  It is a

25   clear conflict.

28

1          THE COURT:  Okay.

2          MR. KAPLAN:  Judge, just to respond again.

3   It is not really conflict that's the issue here.  It

4   is really just what the license agreement said.

5   Under the license agreement, Stelor has all of

6   Mr. Silvers' rights in the intellectual property, and

7   Mr. Rubinstein was moving forward as Stelor's counsel

8   to try and protect those rights.

9          It was just a question of how the

10  proceeding was styled, and they objected to the way

11  it was styled, and appropriate action was taken by

12  Mr. Rubinstein in response.  Now they are trying to

13  take exactly the opposite position, when we got

14  involved in this specific proceeding to try to fight

15  over what the terms of that license agreement are.

16         THE COURT:  I seem to recall that you

17  indicated previously that Mr. Rubinstein has never

18  met or spoken with Mr. Silvers.  Is that correct?

19         MR. RUBINSTEIN:  Your Honor, this is Yano

20  Rubinstein.  Up until yesterday's deposition, the

21  deposition that I defended, I have never laid eyes on

22  Mr. Silvers.  So I don't think that Ms. McQuilkin's

23  divorce lawyer analogy is accurate.

24         I would like to add --

25         THE COURT:  Is it also true that you never

29

1   communicated with him, either orally or in writing?

2           MR. RUBINSTEIN:  That is correct, Your

3   Honor.

4           MS. McQUILKIN:  That is not true.

5           MR. RUBINSTEIN:  And I would also like to

6   add that according to the declaration of Mr. Silvers,

7   I had no authority to file any action in the TTAB,

8   and have since withdrawn any purported representation

9   in the TTAB.  So, if I had no authority to file any

10  action in the TTAB, then no actual representation

11  could have occurred.

12          And furthermore, in the, again, in the

13  UDRP, we never commenced any action on behalf of

14  Mr. Silvers in the National Arbitration Forum.

15          MR. KAPLAN:  Judge, Mr. Kaplan again.  I

16  apologize for double teaming.

17          THE COURT:  Well, let me just interrupt

18  you and prevent the double teaming for a moment --

19          MR. KAPLAN:  Okay.

20          THE COURT:  -- and give Ms. McQuilkin an

21  opportunity to elaborate on her "That's not true"

22  remark.

23          MS. McQUILKIN:  Okay.  I'm sorry.  I

24  didn't mean for you to hear that.

25          But Mr. Rubinstein has sent pleadings to

30

1    Mr. Silvers, until Mr. Silvers found out about him.

2    He started sending and communicating to him via

3    sending the pleadings to him in the mail that he was

4    representing them.  He also contacted Google and

5    spoke to them, saying he represented Mr. Silvers.

6         THE COURT:  I'm more interested in two-way

7    communications, and whether or not there was any

8    divulging of confidential information from

9    Mr. Silvers to Mr. Rubinstein.  Was there any of

10   that?

11        MS. McQUILKIN:  There were no oral

12   communications between the two of them.

13        THE COURT:  Okay.

14        MR. RUBINSTEIN:  Nor any written two-way

15   communication.  I'm sorry.  This is Yano Rubinstein.

16        Nor was there any written two-way

17   communication.  And I believe what Ms. McQuilkin is

18   referring to is perhaps a carbon copy of filings, a

19   courtesy copy sent to Mr. Silvers of filings.

20        THE COURT:  Well, this seems to present a

21   relatively interesting area of conflict of interest

22   law.  My knee-jerk reaction is that it does not rise

23   to the level of being a disqualifying situation.

24        What are the time considerations on this?

25        MS. McQUILKIN:  In terms of?

31

1           THE COURT:  In terms of my ruling.

2           MS. McQUILKIN:  Well, we have --

3           You have not set the injunction hearing

4    yet.  And we have been granted limited discovery

5    relating to the injunction hearing, which was to cut

6    off today.  And we have a response due based on an

7    order that you recently sent out.  That is due next

8    Monday.

9           But you haven't set the hearing, so I

10   would say the timeline is up to Your Honor.  And

11   there has been no other --

12          THE COURT:  What about the deposition

13   representation?

14          MS. McQUILKIN:  The deposition

15   representation?

16          THE COURT:  Yes.  I thought that there was

17   a deposition that was going to occur tomorrow of the

18   principal of Stelor?

19          MS. McQUILKIN:  No.

20          MR. RUBINSTEIN:  Yes, you are correct,

21   Your Honor.  They did agree to produce their client

22   for the deposition tomorrow, and tomorrow is actually

23   the last day that discovery cuts off.  Seeing as how

24   I have come from California to conduct this

25   deposition, I would very much appreciate it if you

32

1   allow me to go forward and conduct the deposition of

2   Mr. Silvers.

3        MS. McQUILKIN:  Your Honor, let me just go

4   back a little bit and remember what was said.

5        THE COURT:  Okay.

6        MS. McQUILKIN:  I said that I had no

7   conflict.  I had to go check with my client to see if

8   he was available.  Before I was able to do that,

9   Mr. Rubinstein interjected and said that Mr. Beiley

10   was not available, and they wanted to have this

11   hearing first to determine this, and whether or not,

12   you know, he could go forward with the deposition.

13        I have since contacted my client.  My

14   client has medical issues that have to be addressed

15   that are scheduled for tomorrow, and he is unable to

16   appear tomorrow.  But I stand by saying that we will,

17   you know, cooperate to produce him when, you know, we

18   can get a mutually convenient time, and we will do

19   that as quickly as possible.  And I can offer

20   Wednesday and Thursday of next week.

21        MR. RUBINSTEIN:  Your Honor, I cannot be

22   available next Wednesday or Thursday.  I was present

23   when Ms. McQuilkin offered to provide her client.

24   I'm wondering if her client was even there.  I have

25   high suspicions that she is not making accurate

33

1    representations of her client's medical condition,

2    and I would strongly request, given that the close of

3    discovery is tomorrow and we have our motion

4    scheduled for next week, that I would respectfully

5    request that the deposition be scheduled for

6    tomorrow.

7            MS. McQUILKIN:  Your Honor, I have to take

8    exception to the personal attack there.

9            You can, I guess you can consider whatever

10   you want.

11           My client was here most of the day, and

12   he, in fact, has medical issues that Mr. Esrig of

13   Stelor is well aware of.  And, you know, we are happy

14   to make him available.  We certainly still believe

15   there is a conflict, but we will stand by your

16   ruling, and we'll cooperate.

17           Now, I understand if local counsel is

18   here, if local counsel is available, you know, we can

19   try to do it.  But we're offering next week, next

20   Tuesday and -- excuse me -- next Wednesday and

21   Thursday based on my client's availability and his

22   medical issues.

23           MR. KAPLAN:  Judge, it is Mr. Kaplan

24   again.

25           You know, they were on notice that

34

1   Mr. Rubinstein was going to be conducting this

2   deposition today last week.

3           THE COURT: Well, regardless of that,

4   let's skip over that, because I don't view that as

5   germane to this.

6           MR. KAPLAN: But the point is, I mean, he

7   is here from California. Mr. Esrig, the client, is

8   here from out of state as well. He is sitting in

9   this room. You know, everybody was prepared to go

10  forward today, and it is just a substantial

11  inconvenience in terms of time and expense if

12  everybody has to fly out and fly back, not to mention

13  the discovery cutoff as well.

14          And also, Mr. Esrig is sitting here

15  shaking his head. He doesn't have any information at

16  all about Mr. Silvers' health problem. There has

17  never been any mention or indication of that.

18          MS. McQUILKIN: Well, I know that is not

19  true. The health issues happens to be a very big

20  issue between the parties, and Mr. Silvers' health

21  coverage, so I know Mr. Esrig is well aware of it.

22          But if we need to move for a protective

23  order based on his medical condition and bring -- I

24  mean, I think it is unnecessary, and certainly if we

25  are offering up for next week. But we can provide --

35

1    I'll provide evidence if the Court feels that I need

2    to provide that to show that he has medical

3    appointments that cannot be missed.

4           THE COURT:  Well, let's try and deal with

5    the motion before me at the moment.  And in that

6    regard, I have an urgent criminal matter that is

7    going to take some ten, fifteen minutes or so that is

8    right now.  When I have finished with that, I'm going

9    to briefly consult with my law clerk and call you all

10   back and announce my decision.

11          So, I think you can expect to get a call

12   in -- and I'll call Ms. McQuilkin first, just like I

13   did this time and have her conference in the other

14   party, and we'll proceed in that fashion, unless

15   somebody has a problem being on a conference call in

16   half an hour.

17          MS. McQUILKIN:  No, we're fine.

18          MR. KAPLAN:  Judge, we'll be available.

19          Will Your Honor be addressing whether the

20   deposition goes forward tomorrow at that time as

21   well?

22          THE COURT:  Why don't we talk about that

23   in half an hour.

24          MR. KAPLAN:  Okay, that's fine.  We'll be

25   available.

36

1          MS. McQUILKIN:  Thank you.

2          (Thereupon, a recess was taken from 4:06

3    to 4:31 p.m., after which the following proceedings

4    were had out of the presence of Mr. Rabin:)

5          MS. McQUILKIN:  Your Honor?

6          THE COURT:  This is Judge Hopkins, and I

7    have my law clerk, Donna Eng, on the line as well.

8          MS. McQUILKIN:  Okay.

9          THE COURT:  If you would be so kind as to

10   conference in the other side, that would be great.

11         MS. McQUILKIN:  Okay.  Hold on.

12         (Mr. Kaplan, Mr. Rubinstein and Mr. Esrig

13   were conferenced in on the call)

14         MR. KAPLAN:  Kevin Kaplan.

15         THE COURT:  Yes.

16         MS. McQUILKIN:  Yes.

17         THE COURT:  Okay, we're here.  Is the

18   court reporter still there?

19         MS. McQUILKIN:  Yes, she is here.

20         THE COURT:  Okay.  Counsel, do you want to

21   announce your appearances?

22         MS. McQUILKIN:  Gail McQuilkin of Kozyak

23   Tropin & Throckmorton on behalf of the defendant,

24   Steven Silvers.

25         MR. KAPLAN:  Kevin Kaplan from Burlington

37

1    Weil Schwiep Kaplan & Blonsky for plaintiff, Stelor

2    Productions.  With me is Yano Rubinstein, and also

3    Mr. Esrig is in the room.

4            THE COURT:  Very well.

5            I'm granting the Motion for Admission Pro

6    Hac Vice.

7            Are there any other outstanding matters?

8            MR. RUBINSTEIN:  Your Honor, this is Yano

9    Rubinstein.  We would request that the deposition

10   goes forward tomorrow.

11           THE COURT:  Well, that's up to you all.

12   And I note that, you know, the local rules require

13   you to behave in a certain manner, consult in a

14   certain manner, and if you deem it appropriate, file

15   appropriate motions.

16           MR. RUBINSTEIN:  Thank you, Your Honor.

17           We would also like to point out -- this is

18   still Yano Rubinstein speaking -- that we have not

19   received the required documents that needed to be

20   produced prior to the deposition and should have been

21   produced no later than today.

22           MS. McQUILKIN:  Your Honor --

23           MR. RUBINSTEIN:  We would --

24           THE COURT:  That again falls under the

25   category of following the local rules for behavior

38

1  and, if appropriate, conferring with the other side

2  and filing the appropriate motions.

3       MS. McQUILKIN:  Your Honor, absolutely.

4  And, you know, I don't even know how to respond to

5  that, because there is --

6       THE COURT:  Well, I don't even want to

7  hear it in this instance.

8       MS. McQUILKIN:  Right.  I agree.

9       THE COURT:  Okay?  So you will all have to

10  do your duty as lawyers under the local rules.

11       MS. McQUILKIN:  We will confer.

12       MR. KAPLAN:  Judge, it is Mr. Kaplan.

13       Could I just inquire on the record, will

14  they be appearing for the deposition that was noticed

15  for tomorrow?

16       MS. McQUILKIN:  First of all, the

17  deposition was not noticed for tomorrow, and I have

18  explained to you -- and we will confer -- about my

19  client's inability to appear past a certain hour

20  tomorrow.  But --

21       THE COURT:  Let me just say again, it is

22  not my role to circumvent the local rules.

23       You all have to follow the local rules,

24  and I will not be drawn into, in the first instance,

25  a squabble where the local rules have not been

39

```
1    complied with.  And if you have any motions after you

2    have complied with the local rules, then you need to

3    file those motions in writing and I will entertain

4    them at that time.

5            MS. McQUILKIN:  Very good, Your Honor.

6            MR. KAPLAN:  Thank you, Your Honor.

7            THE COURT:  I should say, either I or

8    Judge Hurley will entertain them, depending upon

9    which is the appropriate judge to handle it.

10            MS. McQUILKIN:  Very good.

11            MR. KAPLAN:  Thank you, Judge.

12            THE COURT:  Thank you all.

13            (Thereupon, the telephonic hearing was

14    concluded at 4:34 p.m.)

15

16

17

18

19

20

21

22

23

24

25
```

40

```
 1                    HEARING CERTIFICATE

 2

 3        I, NANCY GILBERT, Registered Merit Reporter,

 4   Registered Diplomate Reporter, Certified Realtime

 5   Reporter, certify that I was authorized and did

 6   stenographically report the foregoing proceedings

 7   and that this transcript is a true record of the

 8   proceedings before the Court.

 9        I further certify that I am not a relative,

10   employee, attorney, or counsel for any of the

11   parties nor am I a relative or employee of any of

12   the parties' attorney or counsel connected with the

13   action, nor am I financially interested in the

14   action.

15        Dated this 28th day of December, 2004.

16

17

18                    _____
                      NANCY GILBERT, RMR, RDR, CRR
19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 04-80954-CIV-HURLEY/HOPKINS

STELOR PRODUCTIONS, INC.,
a Delaware corporation,
    Plaintiff,

v.

STEVEN A. SILVERS, a resident of
Palm Beach County, Florida
    Defendant.
_____ /

## ORDER GRANTING MOTION TO APPEAR PRO HAC VICE

This cause has come before the Court upon the application of Yano L. Rubinstein, Esq., counsel for Stelor Productions, Inc., for the permission to appear and participate pro hac vice in the above-captioned case. Being fully advised, the Court

ORDERS, ADJUDGES AND DECREES that said motion be, and the same is hereby GRANTED.

DONE and ORDERED in chambers at the United States District Courthouse, _West Palm Beach_, Florida, this _15_ day of December, 2004.

                    Magistrate Judge
                    U.S. DISTRICT JUDGE
                    SOUTHERN DISTRICT OF FLORIDA

cc:    G. McQuilkin, Esq.
       Adam T. Rabin, Esq.
       Stanley A. Beiley, Esq.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 04-80954-CIV-HURLEY/HOPKINS

STELOR PRODUCTIONS, INC.

        Plaintiff(s),

vs.

STEVEN A. SILVERS,

        Defendant.



_____/

### ORDER GRANTING MOTION FOR SUBSTITUTION OF COUNEL

    **THIS CAUSE** having come before the Court upon the Notice of and Motion for Substitution of Plaintiff's Counsel filed by Plaintiff Stelor Productions, Inc. The Court having reviewed the file, and, being otherwise duly advised, it is hereby

    **ORDERED AND ADJUDGED** as follows:

    1.    The Motion for Substitution is **GRANTED**.

    2.    Laurence R. Hefter, Esq. and the law firm of Finnegan Henderson Farabow Garrett & Dunner, LLP are relieved of any further responsibility with respect to Plaintiff in this matter.

    3.    Yano Rubinstein, Esq., and the law firm of Summers Rubinstein P.C. shall serve as counsel for Plaintiff in this matter, and all future pleadings, correspondence, notices and other papers to be served upon Plaintiff in this matter shall be addressed to Yano Rubinstein, Esq. of the law firm of Summers Rubinstein P.C., 580 California Street, 16th Floor, San Francisco, CA 94104.

CASE NO. 04-80954-CIV-HURLEY/HOPKINS

**DONE AND ORDERED** in ~~Dade County~~ West Palm Beach, Florida, this _16_ day of December, 2004.

Daniel T. K. Hurley
United States District Judge

cc:    Magistrate Judge James Hopkins
        Stanley Beiley, Esq.
        Lawrence Hefter, Esq.
        Gail McGuilkin, Esq.
        Yano Rubinstein, Esq.
        Adam T. Rabin, Esq.

2